

# NUMBER 13-12-00779-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JANET FRIEDMAN,                                                    **Appellant,**

**v.**

GAIL ROZZLLE AND SUN HARBOUR COTTAGES
UNIT 1 OWNERS' ASSOCIATION,                                        **Appellees.**

### On appeal from the 156th District Court
### of Aransas County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez**

This is an appeal from a judgment granting summary judgments and awarding attorney's fees. By eight issues, which we have reorganized and renumbered, appellant Janet Friedman challenges (1) the trial court's declaration that a short-term rental provision is void; and (2) the trial court's award of attorney's fees to appellees Gail Rozzlle

and the Sun Harbour Cottages Unit 1 Owners' Association (the Association).   We affirm.

## I.  BACKGROUND

Rozzlle, owner of a home in Sun Harbour Cottages Unit I (Sun Harbour) and operator of a business that rented cottages there for nineteen years, filed a declaratory judgment action against the Association and the homeowners in the Sun Harbour subdivision, one of whom was Friedman.   Rozzlle sought a determination of whether section 11.3, the short-term rental provision of the Declaration of Covenants, Conditions, and Restrictions (the Declaration) for Sun Harbour, should be enforced.   Section 11.3 provides, in relevant part, the following:   "The term of any lease of a SINGLE FAMILY DWELLING may not be for a period of less than thirty (30) days, with no transient tenancy or occupancy and no hotel purposes allowed."   Rozzlle claimed that the homeowners consented to and waived any right to object to the use of the Sun Harbour cottages for short-term rentals.   She requested that the trial court declare section 11.3 unenforceable, void, and waived by the homeowners.

Friedman answered and filed a counter-claim against Rozzlle and a cross-claim against the Association and all other homeowners, asserting that they had violated the short-term rental provision.   Friedman claimed that the homeowners "continued to offer their properties for short-term rental in direct violation of the [2009] [J]udgment" and that "[t]he Association[ ] has taken no steps to stop this ongoing violation."[1]   She asserted

---

[1]  The referenced 2009 judgment was rendered in *Friedman v. Sun Harbour Cottages Unit I Owner's Association, Nature's Homes, LLC, Gail Rozzlle and Dal Rozzlle*, Cause No. A-06-0175-CV-B, in the 156th District Court, Aransas County, Texas.   In that lawsuit, Friedman asserted fraud, DTPA, and conspiracy claims against Rozzlle for, among other allegations not pertinent here, representing that the cottages could be short-term rented.   And she claimed that the Association "engaged in improper procedures to secure a vote repealing the prohibition on short[-]term rentals and failed to abide by the requirements set out in the [Declaration]."   Friedman also requested a declaration that the amended covenant passed by the Association "on April 25, 2008 which repealed the prohibition on short[-]term

2

that the "[d]efendants [we]re completely aware of the [2009] Judgment and its meaning. The Association approved the form of the [2009] Judgment. The Association had the duty to advise the Defendant Home Owners of its meaning and effect, and to enforce the Restrictions." Friedman sought sanctions and an injunction by her claim.

The Association filed its answer. As to Friedman's allegations, it generally denied her claims. The Association also filed a cross-claim against Friedman, seeking, under section 37.004(a), a declaration as to whether it had a duty to enforce the Declaration's provisions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2008) (providing that an interested person under a deed, will, written contract, or other writings constituting a contract may have determined any question of construction or validity arising under the instrument and obtain a declaration of the rights, status, or other legal relations thereunder). And under section 37.009, the Association sought attorney's fees. *See id.* § 37.009 (West 2008).

Rozzlle and Friedman filed their respective motions for partial summary judgment. The trial court granted Rozzlle's motion against all homeowners, including Friedman, determining that section 11.3 should not be enforced because it had been waived and

---

rentals be declared void and that the Court enter an order prohibiting short[-]term rentals." In response, the Rozzlles and the Association filed counter-suits against Friedman.

The 2009 judgment sets out that, on the second day of trial, Friedman and the Rozzlles dismissed all claims they had asserted or might have asserted between themselves with prejudice. And after the dismissals, the trial court re-aligned the parties. The Association became the plaintiff/counterclaimant, and Friedman became the defendant/counterclaimant. The 2009 judgment further reflects that, following a jury trial, the trial court declared that: (1) the April 25 amendment to section 11.3 was "VOID for failure to obtain at least 51% of the valid votes in favor of such amendment"; (2) the portion of section 11.3 filed with the county clerk on October 3, 2001 had been in effect from that time until the date of the final judgment; and (3) until a valid amendment was made to that section of the Declaration and filed of record, "not less than the entire SINGLE FAMILY DWELLING may be rented or leased under one tenancy or subtenancy." The trial court also awarded the Association $10,000.00 on its claims against Friedman.

awarding Rozzlle her attorney's fees.[2]   The trial court denied Friedman's motion for partial summary judgment, which was based, in relevant part, on res judicata.   The trial court further found that its order disposed of all claims and causes of action in the lawsuit, except for Friedman's cross-claims against the Association and the remaining homeowners.

The Association filed its motion for partial summary judgment, arguing that there was no issue as to any material fact and that it was entitled to summary judgment as a matter of law because the Declaration did not create or impose a duty on the Association to enforce any of the Declaration's conditions or covenants.   The trial court entered summary judgment for the Association, declaring that it had no such duty.

Friedman non-suited the remaining cross-defendants.   And following an evidentiary hearing on the Association's request for attorney's fees, the trial court awarded attorney's fees to the Association against Friedman.   The trial court then entered a final amended judgment reflecting the above rulings.   Finally, it filed findings of fact and conclusions of law related to the Association's request for attorney's fees.

On appeal, Friedman challenges the trial court's declaration that section 11.3 is void.   She also contests the trial court's award of attorney's fees to Rozzlle and to the Association.   Friedman does not dispute the trial court's declaration that the Association had no duty to enforce violations of the Declaration.

## II.  SHORT-TERM RENTAL PROVISION

By issues one, two, and three, Friedman contends that the trial court erred in granting Rozzlle summary judgment and declaring section 11.3 waived because (1)

---

[2] Although the trial court granted Rozzlle summary judgment against all homeowners, only Friedman appeals the judgment.

Rozzlle failed to include a copy of the Declaration in the summary judgment record; (2) the Declaration contained a valid and enforceable anti-waiver provision; and (3) there was a genuine issue of material fact regarding waiver of the short-term rental restriction.

## A.   The Summary Judgment Record

By her first issue, Friedman contends that the trial court erred in granting Rozzlle summary judgment because Rozzlle did not attach a properly authenticated copy of the Declaration to her motion for partial summary judgment.   *See* TEX. R. CIV. P. 166a(c). However, as discussed below, our review of the record reveals that the Declaration was before the trial court in this summary judgment proceeding.

It is well settled that when both sides file summary judgment motions, all of the summary judgment evidence on file is before the trial court.   *DeBord v. Muller*, 446 S.W.2d 299, 301 (Tex. 1969); *Martin v. Harris County Appraisal Dist.*, 44 S.W.3d 190, 193 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *accord Guerra v. Am. Employers' Ins. Co.,* No. 13-02-084-CV, 2003 WL 22025871, at *1 (Tex. App.—Corpus Christi Aug. 29, 2003, pet. denied) (mem. op.).   And one party's summary judgment proof can serve as the alleged missing proof for the other party's summary judgment motion.   *Seaman v. Seaman*, 686 S.W.2d 206, 210 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) (determining that copy of an insurance policy attached to one party's motion provided proof to support the other party's motion, which did not attach the policy).

Friedman filed her motion for summary judgment before Rozzlle filed her motion. Friedman attached a copy of the Declaration as an exhibit to her motion.   The trial court heard Friedman's motion with Rozzlle's motion.   The summary judgment evidence included the Declaration.   *See DeBord,* 446 S.W.2d at 301.   Because Friedman's

5

summary judgment proof could serve as the alleged missing document for Rozzlle's summary judgment motion, *see Seaman*, 686 S.W.2d at 210, the Declaration was before the trial court for its review and consideration when it granted Rozzlle's motion and denied Friedman's motion.   This argument fails, and we overrule Friedman's first issue.

## B.  The Anti-Waiver Provision

By her second issue, Friedman argues that the trial court erred in declaring section 11.3 waived because the deed provisions contained an anti-waiver provision.   Friedman presents this argument for the first time on appeal.   The failure to raise the objection or argument in the trial court waives the issue on appeal.   *See* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *see also Musgrove v. Westridge Street Partners I, LLC*, No. 02-07-281-CV, 2009 WL 976010, at *4 (Tex. App.—Fort Worth April 9, 2009, pet. denied) (mem. op.) (per curiam) ("Like other contractual provisions, nonwaiver provisions can be waived.").   We conclude that Friedman has waived this argument.   We overrule this second issue.

## C.  Waiver

By her third issue, Friedman contends that the trial court erred when it granted partial summary judgment and then a final judgment declaring section 11.3 void because Rozzlle failed to cite cases in her summary judgment motion that specifically addressed waiver of restrictive covenants and, thus, failed to analyze the requirements of waiver set out in such cases.   Friedman argues that Rozzlle, therefore, did not establish that there was no genuine issue of material fact as to waiver and that she was entitled to judgment

6

as a matter of law on that basis.   We disagree.

### 1.   Standard of Review and Applicable Law

Appellate courts in Texas review summary judgments de novo.   *Alejandro v. Bell*, 84 S.W.3d 383, 390 (Tex. App.—Corpus Christi 2002, no pet.).   In a traditional motion for summary judgment, the movant has the burden of showing both that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law.   TEX. R. CIV. P. 166a(c); *see Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972); *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 772 (Tex. App.—Corpus Christi 2003, no pet.).

Waiver is the intentional surrender of a known right or intentional conduct inconsistent with claiming that right.   *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643–44 (Tex. 1996); *Straus v. Kirby Court Corp.*, 909 S.W.2d 105, 108 (Tex. App.—Houston [14th Dist.] 1995, writ denied).   "[W]hen the facts and circumstances are admitted or clearly established, the question becomes one of law."   *Tenneco Inc.*, 925 S.W.2d at 643–44 (finding waiver was established as a matter of law in a summary judgment proceeding).   "A party's express renunciation of a known right can establish waiver.   Silence or inaction, for so long a period as to show an intention to yield the known right, is also enough to prove waiver."   *Id.*   The elements of waiver are (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right or intentional conduct inconsistent with the right.   *Id.*

Cases specific to restrictive covenants, such as those cited to this Court by Friedman, develop the third element of waiver—the party's actual intent to relinquish the right or intentional conduct inconsistent with the right.   *See id.*   For example, Friedman

7

quotes the following from *Sharpstown Civic Association, Inc. v. Picket*:

> [I]n order to support a waiver of residential restrictions the proposed use must not be substantially different in its effect on the neighborhood from any prior violation. To put it another way, the prior violation that has been carried on without objection, if insignificant or insubstantial when compared to the proposed or new use, will not support a waiver of the new and greater violation.

679 S.W.2d 956, 958 (Tex. 1984); *see Cox v. Melson-Fulsom*, 956 S.W.2d 791, 794 (Tex. App.—Austin 1997, no pet.) ("[T]o carry the burden of demonstrating waiver of restrictive covenants, a party must prove that "the violations that existed were so extensive and material as to reasonably lead to the conclusion that the restrictions had been abandoned."); *see also Musgrove*, 2009 WL 976010, at *3 (identifying the following non-exhaustive factors to consider when evaluating waiver of restrictive covenants: "the nature and severity of past violations relative to the restriction sought to be enforced, the extent to which the person attempting to enforce the restriction relied on the restriction in purchasing the property, and the number of properties subject to the restriction relative to the number of violations") (citations omitted)). And "[a] court may refuse to enforce a restrictive covenant because of the acquiescence of the lot owners in such substantial violations within the restricted area as to amount to an abandonment of the covenant or a waiver of the right to enforce it." *Cowling v. Colligan*, 158 Tex. 458, 461–62, 312 S.W.2d 943, 945 (1958). Finally,

> [t]he failure of property owners to object to trivial violations does not preclude enforcement of the covenant. On the other hand, an abandonment or waiver finding should be sustained where the party resisting enforcement of the covenant presents proof that the violations then existing were so extensive and material as to reasonably lead to the conclusion that the restrictions had been abandoned or waived.

*Pebble Beach Prop. Owners' Ass'n v. Sherer*, 2 S.W.3d 283, 289–90 (Tex. App.—San

8

Antonio 1999, pet. denied); *see Cox*, 956 S.W.2d at 794.

## 2. Discussion

As to the first two elements of waiver, Friedman does not dispute that she had actual knowledge of section 11.3 or that it provided for no short-term rental of the cottages. *See Tenneco Inc.*, 925 S.W.2d at 643–44. She challenges the sufficiency of the evidence to support the third element; i.e., the homeowner's "actual intent" to abandon or waive the short-term rental restriction. *See id.* As to that element, the summary judgment evidence shows that short-term rentals of properties at Sun Harbour occurred without objection for over a decade. Friedman admitted she knew cottages were being short-term rented when she first considered buying a cottage in 2001. Friedman, herself, short-term rented a cottage, then short-term rented another cottage, and then closed on her cottage. Friedman short-term rented her own cottage to a third party before purchasing yet another cottage. Other homeowners testified that they, too, had repeatedly short-term rented their cottages at Sun Harbour from 2001 to 2009 and that they had seen Friedman's cottage used on a short-term basis.

Friedman also knew Rozzlle had been handling short-term cottage rentals for years. Friedman was aware of a sign advertising short-term rentals that had been in place since at least 2001. The sign, which was still in place in 2009, had Rozzlle's phone number on it. The summary judgment evidence also shows that Friedman participated in homeowners' association meetings where the homeowners discussed short-term rentals and where she interacted with other homeowners who were renting their cottages short term.

We cannot conclude that the violations of section 11.3 that were carried on without

9

objection at Sun Harbour by homeowners, including Friedman, for at least ten years were insignificant or insubstantial. *See Picket*, 679 S.W.2d at 958. Instead, the violations of the short-term rental provision were extensive and material. *See Sherer*, 2 S.W.3d at 289–90. The homeowners' acquiescence in these substantial violations of this provision amounted to an abandonment of the provision or a waiver of the right to enforce it. *See Cowling*, 312 S.W.2d at 945. The evidence established that Friedman engaged in conduct inconsistent with claiming any right to enforce the short-term rental provision, which is the third element of waiver. *See Tenneco Inc.*, 925 S.W.2d at 643–44. Thus, Rozzlle established that there was no genuine issue of material fact as to waiver and that she was entitled to judgment as a matter of law on this basis. *See* Tex. R. Civ. P. 166a(c). The trial court did not err in granting Rozzlle summary judgment based on waiver. Friedman's third issue is overruled.

## D. Release

Friedman complains by her fourth issue that the trial court erred by granting partial summary judgment and final judgment to Rozzlle on the issue of release because the release documents contained in the summary judgment record are unsigned.[3] Having concluded that Rozzlle established waiver and that waiver supported the trial court's judgment, we need not address the fourth issue that challenges another summary judgment ground that Rozzlle brought in her motion, as it is not dispositive of this appeal. *See* Tex. R. App. P. 47.1 (stating that an appellate court must address every issue

---

[3] We note that in its original summary judgment the trial court "ordered, adjudged, and decreed" that the homeowners, including Friedman, waived section 11.3 of the Declaration, making that section void and unenforceable. However, when the trial court incorporated this prior ruling into its amended final judgment, it "ordered, adjudged, and decreed" that section 11.3 was "void and shall be of no further force and effect," without mentioning waiver as a basis for its determination. Arguably, release could have been another basis for the trial court's ruling. *See Bradley v. White*, 990 S.W.2d 245, 247 (Tex. 1999).

necessary for final disposition of appeal); *see also Bradley v. White*, 990 S.W.2d 245, 247 (Tex. 1999) ("When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious.").

## E. Res Judicata

By her fifth issue, Friedman claims that the trial court erred when it concluded that the 2009 Judgment in *Friedman v. Sun Harbour Cottages Unit I Owner's Association, Nature's Homes, LLC, Gail Rozzlle and Dal Rozzlle,* Cause No. A-06-0175-CV-B, filed in the 156th District Court, Aransas County, Texas, was not res judicata as to Rozzlle.[4] In response, Rozzlle asserts that she was not in privity with the Association in the prior lawsuit and, therefore, the 2009 Judgment does not bind her. We agree with Rozzlle.

"Generally, persons are not bound by a judgment in a suit to which they were not parties." *Mayes v. Stewart*, 11 S.W.3d 440, 449 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (citing *Armstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(a) (West 2008). However, the doctrine of res judicata creates an exception to that rule by forbidding a second suit arising out of the same subject matter of an earlier suit by those in privity with the parties to the original suit. *Armstadt*, 919 S.W.2d at 652–53; *see Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 799 (Tex. 1992) (quoting *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex. 1992)). To establish privity, one of the following must be proven: (1) the non-party had control over the first action even though she was not a party; (2) the non-party's interests

---

[4] Friedman also claims, without argument and without citation to the record or to authority, that res judicata prevents summary judgment in favor of the Association. We conclude that this argument is inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

were fully represented in that first action; or (3) the non-party is a successor in interest to a piece of property for which rights and/or claims were decided in a prior lawsuit.[5] *Armstadt*, 919 S.W.2d at 653; *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971).

In the prior lawsuit, Friedman asserted fraud, DTPA, and conspiracy claims against Rozzlle, which related to, among other things, the short-term rental of properties at Sun Harbour. Friedman also sought an injunction. In response, Rozzlle filed counter-claims against Friedman. However, on the second day of trial, Friedman and Rozzlle dismissed their claims against each other with prejudice. The remaining parties were re-aligned, and the Association became the plaintiff and Friedman became the defendant.

The summary judgment evidence in this case shows that when Rozzlle was dismissed from the prior lawsuit, she was excluded from the courtroom. The Association's lawyer had agreed to represent the Association and the individual defendant owners, except for Rozzlle. Friedman points us to no evidence, and we find none, supporting the control theory of privity or the interests-represented theory of privity in this case. *See Armstadt*, 919 S.W.2d at 653; *Benson*, 468 S.W.2d at 363. Based on our de novo review, we cannot conclude that Rozzlle was in privity with the parties to the prior suit, such that the doctrine of res judicata applied. Instead, we conclude that the trial court did not err in determining that the 2009 Judgment in the prior lawsuit was not res judicata as to Rozzlle. We overrule Friedman's fifth issue.

---

[5] The subsequent-purchaser theory of privity is not applicable here because there is no allegation that Rozzlle subsequently purchased property, the rights of which were litigated in the prior lawsuit. *See Armstadt v. U.S. Brass* Corp, 919 S.W.2d 644, 653 (Tex. 1996); *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971).

### III. ATTORNEY'S FEES

By her sixth and seventh issues, Friedman challenges the portion of the trial court's summary judgment that awards attorney's fees to Rozzlle. In her eighth issue, Friedman complains of the trial court's award of attorney's fees to the Association following a bench trial.

#### A. Standard of Review and Applicable Law

We review a trial court's decision to award or not award attorney's fees in a declaratory judgment action for an abuse of discretion. *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009; *Montemayor v. Ortiz*, 208 S.W.3d 627, 662–63 (Tex. App.—Corpus Christi 2006, pet. denied) (op. on reh'g). To determine whether a trial court abused its discretion, we must decide "whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam).

Under the Texas Uniform Declaratory Judgments Act (the Act), "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009; *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 643 (Tex. 2005); *Potter*, 230 S.W.3d at 466. The reasonable and necessary requirements are questions of fact to be determined by the factfinder, but the equitable and just requirements are questions of law for the trial court to decide. *Ridge Oil*, 148 S.W.3d at 161. Under an abuse of discretion standard, legal and factual insufficiency are relevant factors in assessing whether the trial court abused its discretion. *See Beaumont Bank v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *In re Driver*, 895 S.W.2d 875,

13

877 (Tex. App.—Texarkana 1995, no writ); *D.R. v. J.A.R.*, 894 S.W.2d 91, 95 (Tex. App.—Fort Worth 1995, writ denied) (op. on reh'g); *Mai v. Mai*, 853 S.W.2d 615, 618 (Tex. App.—Houston [1st Dist.] 1993, no writ). Relevant to this case,

> [w]hen an appellant attacks the legal sufficiency of an adverse finding on an issue for which it did not have the burden of proof, the appellant must demonstrate that there is no evidence to support the adverse finding. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Such a no-evidence challenge will be sustained only if: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). In conducting a legal sufficiency review, we review the evidence presented at trial in the light most favorable to the jury's verdict and indulge every reasonable inference that would support it, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010); *City of Keller*, 168 S.W.3d at 822, 827.

*Editorial Caballero, S.A. de C.V. v. Playboy Enters., Inc.*, 359 S.W.3d 318, 328–29 (Tex. App.—Corpus Christi 2012, pet. denied).

As to our review of the attorney's fees awarded to the Association, findings of fact in a bench trial have the same force and dignity as a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When, as in this case, a complete reporter's record is filed, the trial court's fact-findings may be reviewed for legal and factual sufficiency under the same standards as jury verdicts—the standards set out above. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam); *Catalina*, 881 S.W.2d at 297.

Appellate courts review a trial court's challenged conclusions of law as legal questions. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

14

Accordingly, courts of appeals apply a de novo standard. *In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994). An appellant may not challenge a trial court's conclusions of law for factual sufficiency. *BMC Software*, 83 S.W.3d at 794. However, appellate courts determine the correctness of the trial court's legal conclusions drawn from the facts. *Id.* If a court of appeals determines that a conclusion of law is not correct, but the trial court rendered the proper judgment, the incorrect conclusion of law does not require reversal. *Id.* In other words, in reviewing challenges to a trial court's conclusions of law, a court of appeals sustains the judgment on any legal theory supported by the evidence. *See Vasquez v. Vasquez*, 973 S.W.2d 330, 331 (Tex. App.—Corpus Christi 1998, pet. denied).

## B. Rozzlle's Attorney's Fees

By her sixth issue, Friedman argues that because of the arguments set forth in her first, second, and third issues, the trial court erred when it awarded Rozzlle attorney's fees. Having overruled the first three issues, we conclude that Friedman has no support for this argument, and we overrule Friedman's sixth issue.

Friedman asserts, in her seventh issue, that a genuine issue of material fact as to the reasonableness of the requested fees precluded the award of attorney's fees to Rozzlle. Friedman complains that the evidence provided by Rozzlle's trial counsel in support of Rozzlle's request for attorney's fees is "wholly conclusory and unsupported by facts or analysis to justify the dollar amounts requested." *See Transcont'l Ins. Co. v. Briggs Equip. Trust*, 321 S.W.3d 685, 692–93 n.1 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (providing that a challenge to the conclusory nature of summary judgment evidence may be raised for the first time on appeal); *Branton v. Wood*, 100 S.W.3d 645,

15

648 (Tex. App.—Corpus Christi 2003, no pet.) (same).

In support of her request for attorney's fees, Rozzlle attached her attorney's affidavit to her motion for summary judgment. The affidavit set out the following:

> I am the attorney of record for Gail Rozzlle, Plaintiff in this cause of action, involving numerous defendants, including Janet Friedman. The majority of the time I have spent on this file involves matters pertaining to Janet Friedman. Legal services provided through this firm with regard to the claims pertaining to Janet Friedman only include but are not limited to telephone conferences with our clients, with witnesses, with various pro se parties, with attorneys for other parties and with counsel for Defendant Friedman; preparation of Plaintiff's petition; letters to client; preparation of disclaimers; letters to other defendants regarding disclaimer; review of depositions in prior lawsuit; telephone conferences and letters to court manager regarding trial setting; attendance at docket control conference; conferences with client regarding claims' receipt and review of counterclaim from Friedman; preparation of answer to counterclaim; preparation of Motion to appoint mediator; preparation of Request for Disclosure; receipt and review of Motion for Partial Summary Judgment from Defendant Friedman; preparation and filing of response to Friedman's Motion for Partial Summary Judgment; conferences with co-counsel regarding Motion for Partial Summary Judgment from Friedman; attendance at mediation; preparation for trial; preparation of draft of jury questions; preparation of trial exhibits; preparation for pretrial conference; attend pretrial conference; attend docket call; preparation of Plaintiff's Motion for Summary Judgment; anticipated preparation of reply to Friedman's response to Plaintiff's Motion for Summary Judgment.
>
> Based upon the above description of legal services provided to Gail Rozzlle with regard to the Janet Friedman matter only, a reasonable and necessary attorney's fee through entry of judgment is the sum of $37,447.34. For representation through appeal to the Court of Appeal an additional attorney's fee in the amount of $12,500.00; for representation at the petition for review stage in the Supreme Court of Texas an additional attorney's fee of $5,000.00; for representation at the merits briefing stage in the Supreme Court of Texas an additional attorney's fee of $12,500.00; for representation through oral argument and the completion of proceedings in the Supreme Court of Texas an additional attorney's fees of $7,500.00 would be reasonable and necessary.

Friedman argues that Rozzlle's counsel failed to provide any testimony or other evidence to support his conclusion that any of the amounts identified in his affidavit would

16

be reasonable attorney's fees.   We disagree.

> An attorney's testimony about the reasonableness of his or her own fees is not like other expert witness testimony.   Although rooted in the attorney's experience and expertise, it also consists of the attorney's personal knowledge about the underlying work and its particular value to the client.   The testimony is similar to that of a property owner whose personal knowledge qualifies him to give an opinion about his own property's value.   The attorney's testimony is not objectionable as merely conclusory because the opposing party, or that party's attorney, likewise has some knowledge of the time and effort involved and if the matter is truly in dispute, may effectively question the attorney regarding the reasonableness of his fee.

*Garcia v. Gomez*, 319 S.W.3d 638, 641 (Tex. 2010) (citations omitted).   Evaluating the conclusory nature of an attorney's affidavit filed in support of an attorney's fees request, the *Garcia* Court held that "[w]hile the attorney's testimony lacked specifics, it was not, under these circumstances, merely conclusory."[6]   *Id.*   We reach the same conclusion in this case.

First, counsel's affidavit does not lack specifics as to the legal services counsel provided.   Even if the affidavit lacked specific facts or analysis to justify the dollar amounts requested as argued by Friedman, we would still conclude that under these circumstances, it is not merely conclusory.   *See id.*   The affidavit explained that counsel was Rozzlle's attorney of record.   It provided counsel's personal knowledge of the

---

[6] The affidavit filed in *Garcia v. Gomez* stated the following:

> My name is Ronald Hole.   I'm an attorney practicing in Hidalgo County, doing medical-malpractice law/litigation.   I have done it since 1984.   For a usual and customary case like this these fees for handling it up to the point of dismissal, the reasonable and necessary attorney's fees for handling that is 12,200 dollars.

> If the case is appealed to the Court of Appeals, the reasonable fee for handling the matter at the Court of Appeals would be 8,000 dollars.   If a Petition for Review is filed at the Supreme Court, an additional fee of 5,000 dollars would be reasonable for handling the matter of the Petition for Review and our brief or briefs on the merit.   Petition granted by the Supreme Court then adds an additional 6,000 dollars.   That would be a reasonable fee for handling the matter at that stage.

319 S.W.3d 638, 741 (Tex. 2010).

17

lawsuit by listing the underlying work he performed in this lawsuit, most of which was done on matters pertaining to Friedman. The affidavit also set forth the reasonable fee for that work and the reasonable fee for any anticipated appeal. Friedman lodged no objections to Rozzlle's affidavit in the trial court, and she filed nothing to controvert it. *See* TEX. R. CIV. P. 166a(c) (explaining that a summary judgment respondent "may file and serve opposing affidavits or other written response"); *see also Garcia*, 319 S.W.3d at 641.

We conclude that this uncontroverted affidavit is not conclusory. Rather, it is proper summary judgment evidence, and Rozzlle showed there was no genuine issue of material fact as to the reasonableness of her fee request. *See* TEX. R. CIV. P. 166a(c). Based on this determination, the trial court did not abuse its discretion in awarding Rozzlle reasonable attorney's fees, including appellate fees, in the amount requested by Rozzlle. *See Buller*, 806 S.W.2d at 226. We overrule Friedman's seventh issue.

## C.  The Association's Attorney's Fees

### 1.  Necessary Fees

By her eighth issue, Friedman challenges the evidence supporting the trial court's findings of fact and conclusions of law that the fees requested by the Association were "necessary" for the representation of the Association at each stage of the proceeding. Friedman argues that the evidence does not support a finding that fees were necessary to the prosecution of an action under the Act. Instead, she contends that the Association was simply performing legal work in defense of her claim and not for the prosecution of its declaratory judgment claim. Friedman bases her argument, in part, on the fact that the Association did not assert a claim under the Act until after she and Rozzlle had made claims against the Association.

18

Friedman claims that by its counter-suit, the Association was attempting to recover attorney's fees by "repackaging" its defense to her claims as a declaratory judgment action. *See Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011) (per curiam) ("We have held that simply repleading a claim as one for a declaratory judgment cannot serve as a basis for attorney's fees . . . ."). "When a claim for declaratory relief is merely "tacked onto" statutory or common-law claims that do not permit fees, allowing the UDJA to serve as a basis for fees 'would violate the rule that specific provisions should prevail over general ones.'" *Id.* (quoting *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009)).

Friedman cross-claimed against the Association in this suit, seeking only to hold the Association liable for failing to enforce one restriction of the Declaration. Her pleadings and motion, as they relate to the Association, involved only section 11.3. She alleged nothing about a duty to enforce any other provision in the Declaration. In the Association's request for declaratory relief, however, it requested a ruling under section 37.004 that it had no general or overall duty to enforce any of the conditions and covenants imposed by the Declaration. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a).

The supreme court has determined that a counter-claim that seeks relief in an ongoing relationship by interpretation of a contract that would have the effect of settling all future disputes as to the obligation of the parties may well go beyond an opponent's claim for specific relief. *BHP Petroleum Co., Inc. v. Millard*, 800 S.W.2d 838, 841–42 (Tex. 1990) (per curiam); *see Cont'l Homes of Tex., L.P. v. City of San Antonio*, 275 S.W.3d 9, 20–21 (Tex. App.—San Antonio 2008, pet. denied); *Indian Beach Prop. Owners' Ass'n v.*

*Linden*, 222 S.W.3d 682, 702 (Tex. App.—San Antonio 2007, no pet.). In *Indian Beach*, a case that involved both the enforcement of a specific restriction and a counterclaim for a declaration interpreting the restrictions, the San Antonio Court explained the following:

> Although Linden and B.J.'s counterclaim appears to be nothing more than a denial of Indian's cause of action, because it involves the interpretation of deed restrictions, Linden and B.J. have stated a cause of action on which they could recover benefits, compensation, or relief if Indian abandoned or failed to establish its cause of action.

222 S.W.3d at 702.

As in *BHP Petroleum* and *Indian Beach*, the Association's claim went beyond a mere defense to Friedman's claims. *See BHP Petroleum*, 800 S.W.2d at 841–42; *Indian Beach*, 222 S.W.3d at 702. It brought a new claim, seeking a declaration of rights independent of Friedman's claims. *See BHP Petroleum*, 800 S.W.2d at 841–42; *Indian Beach*, 222 S.W.3d at 702; *see also Flagship Hotel, Ltd. v. City of Galveston*, 117 S.W.3d 552, 566 & n.8 (Tex. App.—Texarkana 2003, pet. denied). We cannot conclude that the Association "repackaged" its defense in an attempt to obtain attorney's fees or that it merely "tacked" its claim on to Friedman's claims that did not permit fees. *See Lehmann*, 359 S.W.3d at 624. For even had Friedman nonsuited her cross-claim, the Association could have pursued its request for a declaration that it had no general duty to enforce the conditions and covenants of the Declaration. *See Indian Beach*, 222 S.W.3d at 702. In addition, the interpretation of the Declaration requested by the Association would have the effect of settling future disputes as to the duty of the Association to enforce all restrictions, which would go well beyond Friedman's claim for specific relief related to section 11.3. *See BHP Petroleum*, 800 S.W.2d at 841–42.

Based on the above, we conclude that the Association asserted a cause of action

cognizable under section 37.004 of the Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a). As such, the trial court had the discretion to award attorney's fees under section 37.009.[7] *See id.* at § 37.009.

### 2. Legal Sufficiency Challenge

Friedman also asserts by her eighth issue that the Association is not entitled "to recover appellate attorney's fees of any kind because the evidence in support of such appellate fees was wholly conclusory and without factual predicate." We construe this issue as a challenge to the legal sufficiency of the evidence to support the trial court's award of appellate attorney's fees to the Association, specifically the reasonableness of the award. *See Ridge Oil*, 148 S.W.3d at 161.

Generally, a trial court may award conditional attorneys' fees for an unsuccessful appeal. *See Keith v. Keith*, 221 S.W.3d 156, 169 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("The trial court's award of attorney's fees may include appellate attorney's fees."). "However, there must be evidence of the reasonableness of fees for appellate work to support the award of appellate attorney's fees." *Id.* Here, the trial court conditionally awarded the Association $15,000.00 for an appeal to the court of appeals, $7,500.00 for an appeal to the supreme court, and $15,000.00 if the supreme court granted a petition for review.

At the bench trial on attorney's fees, the Association's counsel, after being duly

---

[7] To the extent this contention could be construed as a segregation-of-fees argument, Friedman did not object on that basis at trial and has not preserved that issue for our review. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997) (providing that a party opposing a request for attorney's fees must properly preserve for appellate review a contention that the fee claimant failed to segregate the fees sought); *Cullins v. Foster*, 171 S.W.3d 521, 535–36 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (explaining that a segregation issue is generally preserved by objection during testimony offered in support of attorney's fees or an objection to the jury question on attorney's fees); *Cont'l Dredging, Inc. v. De–Kaizered, Inc.*, 120 S.W.3d 380, 397 (Tex. App.—Texarkana 2003, pet. denied) (op. on reh'g) (same).

sworn, *see Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (per curiam) (setting out that the general rule is that an attorney's statements must be under oath to constitute evidence), testified as a witness on the issue of his trial and appellate attorney's fees. Counsel explained that in 1973 he received his license "to practice law before the Texas Supreme Court and all other courts in the state."  He stated that he is board-certified in civil trial and personal injury, but confines his practice to civil trial work.  Counsel testified as to his fee rate and the fee rates of other lawyers and legal assistants who worked on the case.  He testified that the fees assessed through trial were reasonable for work of the nature involved in this lawsuit.  Counsel expressed his opinion that the amount of reasonable appellate fees would be:  (1) $15,000.00 for successful representation of the Association to the court of appeals; (2) $7,500.00 to file a petition or reply to one in the Texas Supreme Court; and (3) $15,000.00 to respond if the supreme court grants a petition.  Trial counsel also testified as to each of the *Arthur Anderson* factors.  *See Arthur Andersen & Co. v. Perry Equipment* Corp., 945 S.W.2d 812, 818 (Tex. 1997) (providing a non-exclusive list of eight factors for the factfinder to consider when determining the reasonableness of a fee, including:  "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or

22

contingent on results obtained or uncertainty of collection before the legal services have been rendered."); *see also* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (providing the same non-exhaustive list of factors to consider when addressing whether attorney's fees are reasonable and necessary).

Acknowledging that counsel for the Association testified as to the amounts it sought to recover as appellate attorney's fees, Friedman now complains that the evidence is insufficient to support those fees because the Association's counsel failed to state the number of hours it would take to appeal the suit, the type of work, the difficulty of the work, or any other factual bases for his appellate fee request. Friedman does not support her argument with any law requiring the reversal of an appellate attorney's fees award due to the absence of this specific testimony, and we will not impose such a requirement. *See Keith*, 221 S.W.3d at 170 (citing *George Pharis Chevrolet, Inc. v. Polk*, 661 S.W.2d 314, 318 (Tex. App.—Houston [1st Dist.] 1983, no writ) (holding that the complained-of deficiency concerning number of hours spent and reasonable hourly rate goes only to the weight of evidence and is not of such a magnitude that would render it insufficient as a matter of law)). The Association's counsel testified without objection regarding appellate attorney's fees. Friedman's attorney, who had some knowledge of the time and effort involved, cross-examined him. *See Garcia*, 319 S.W.3d at 641. If the matter was truly in dispute, Friedman's counsel could have effectively questioned the Association's attorney regarding the reasonableness of his fees. *See id.* He did not.

Reviewing the evidence presented at trial in the light most favorable to the trial court's judgment and indulging every reasonable inference that would support it, we conclude that the Association produced more than a scintilla of evidence to support the

23

appellate attorney's fees awarded to the Association. *See Smith*, 307 S.W.3d at 770; *City of Keller*, 168 S.W.3d at 810, 822, 827; *Editorial Caballero*, 359 S.W.3d at 328–29. We further conclude that the trial court did not abuse its discretion when it awarded the Association appellate fees after finding that the legal services performed for the Association were reasonable and necessary and after it concluded that they were equitable and just. *See Ridge Oil Co.*, 148 S.W.3d at 163; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009; *Montemayor*, 208 S.W.3d at 662–63.

We overrule Friedman's eighth issue.

## IV. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 21st
day of November, 2013.

24